IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA      )
                              )
        v.                    )     CRIMINAL ACTION NO.
                              )        2:11cr191-MHT
JEFFERY NOLAN BENNETT          )           (WO)

MEMORANDUM OPINION

Defendant Jeffery Nolan Bennett pled guilty to count
one of a multi-count indictment, which charged him with
conspiracy (under 28 U.S.C. § 846) to possess with the
intent to distribute 280 grams or more of cocaine base
(commonly known as "crack") in violation of 21 U.S.C.
§ 841(a)(1). During his sentencing on October 23, 2012,
this court orally denied his motion to withdraw his
previously entered guilty plea. The court now issues this
opinion more fully explaining its reasoning.

A defendant may withdraw a plea of guilty after the
plea has been accepted by the court and prior to sentencing
if "the defendant can show a fair and just reason for
requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

"In determining whether the defendant has met his burden to show a 'fair and just reason,' a district court may consider the totality of the circumstances surrounding the plea." <u>United States v. Brehm</u>, 442 F.3d 1291, 1298 (11th Cir. 2006) (citation and quotation marks omitted). In addition, "[i]n the course of this inquiry, we consider (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." <u>Id</u>. (citation and quotation marks omitted).

In this case, Bennett contended that withdrawal was warranted because he had been misled by the government as to the sentence it would recommend to the court. According to Bennett, the government had assured him that it would recommend a sentence reduction pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) (both providing for sentencing reductions in exchange for defendants' substantial assistance to the government) sufficient to result in a

sentence of between five to seven years of incarceration, or, at least, some number "well below" 15 years. But, the government ultimately offered a recommendation that, if adopted by the court, would result in a sentence of approximately 17 years. Because of this breach of the understanding between the government and him, Bennett contended, he could rescind his guilty plea and proceed to trial.

The overwhelming weight of the evidence revealed that the government never made the sort of secret promise Bennett asserted. First, based on Bennett's criminal history (as represented by the information the government filed with the court pursuant to 21 U.S.C. § 851), Bennett was subject to a mandatory-minimum sentence of 20 years. Although the government's motion for a reduction pursuant to 18 U.S.C. § 3553(e) authorized the court to sentence Bennett below that "mandatory" minimum term (as it is somewhat misleadingly called in this context), a sentencing reduction as high as 75 % of the 20-year term (which a final sentence of five years would have represented) would

have been extraordinary in light of the facts of this case.[*] Cf. United States v. Soto, 216 F. App'x 946, 950 (11th Cir. 2007) (unpublished) ("The court's departure from a mandatory minimum sentence of 60 months to a sentence of 9 months constitutes an 85 percent reduction. In light of the court's acknowledgment that Soto's assistance was 'de minimis' and that Soto did not have the ability or the knowledge to offer more assistance than he did, the reduction was not reasonable."). Second, the plea agreement Bennett signed explicitly addressed the extent of the government's substantial-assistance recommendation in only one part, which stated that the government would move for a departure "of at least (1) level pursuant to U.S.S.G. § 5K1.1." Plea Agmt. (Doc. No. 317) at 3. The plea agreement provided no indication of an understanding that the government would offer anything more. Moreover, when Bennett entered his guilty plea, he was asked whether

_____

[*] After denying Bennett's motion to withdraw his guilty plea, the court proceeded to sentence him. Bennett received a reduction of approximately 25 % of the 20-year minimum, with his final sentence being 188 months incarceration (which is between 15 and 16 years).

4

"anyone [has] made any promises or assurances of any kind to get [him] to plead guilty other than those that are in the Plea Agreement?"  Change of Plea Hr'g Tr. (Doc. No. 448) at 6:3-5. He answered, "No, ma'am."  Id. at 6:6.  Upon hearing Bennett's answer, his attorney did not assert anything to the contrary that Bennett had failed to mention.  This clear evidence of the absence of a secret agreement was countered only by Bennett's mere later assertions to the contrary.

Aside from Bennett's argument regarding the breached understanding, Bennett put forth no other reason as to why he should be permitted to withdraw his guilty plea.  As the court found that no such understanding was had, Bennett plainly did not satisfy his burden of establishing a "fair and just reason" for withdrawing his guilty plea.  See United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988) ("The court concluded that Buckles had not presented any just or fair reason for withdrawing his guilty plea and, therefore, denied his motion.").

Although the court has now fully explained its reasons for denying Bennett's motion to withdraw his guilty plea, some additional illuminating circumstances in this case warrant brief discussion. Those are, if Bennett did not withdraw his guilty plea and was instead sentenced pursuant to the plea agreement (which he was), his mandatory-minimum sentence (prior to an appropriate reduction for assistance to the government) would have been (and because he was not permitted to withdraw his guilty plea, actually was) 20 years. But, if he had withdrawn his guilty plea, proceeded to trial, and was found guilty, he would have faced a mandatory-minimum sentence not of 20 years, but rather of life imprisonment. The controlling mandatory-minimum sentence—whether 20 years, life imprisonment, or something else—would have been, and was, decided through prosecutorial discretion exercised by the government, and this court's power to differ from the government's chosen sentence would have been, and was, very limited.

Under statutory law, a defendant sentenced for trafficking certain drugs (including crack) is subject to

escalating mandatory-minimum sentences of zero, five, ten, 20 years, or life imprisonment, depending on his criminal history and the quantity of drugs for which he is held responsible.    See 21 U.S.C. § 841(b); United States v. Gonzalez, 420 F.3d 111, 121 (2d Cir. 2005) (listing the conditions under which different mandatory-minimum sentences are invoked).  The defendant's criminal history is one of the determinative factors in deciding which mandatory-minimum term applies, and the law affords prosecutors the discretion to decide the extent to which that criminal history will be placed before the court.  See 21 U.S.C. § 851 ("No person who stands convicted of an offense ... shall be sentenced to increased punishment by reason of one or more prior convictions, unless ... the United States attorney files an information with the court stating in writing the previous convictions to be relied upon.").    Therefore, in the case of a defendant with several prior convictions, the government is essentially granted sole discretion of choosing whether a mandatory-minimum sentence of as high as life, or as low as zero or

five years, is to apply. And, once the government has made that determination, the court's sole power under the law to sentence the defendant below the government's chosen mandatory minimum is under 18 U.S.C. § 3553(e), for the defendant's assistance to the government. <u>See</u> <u>United States v. Lamar</u>, 687 F. Supp. 2d 1316 (M.D. Ala. 2009) (Thompson, J.). But once again, the law gives the government, not the court, the discretion to determine whether a § 3553(e) reduction may be given. <u>See</u> <u>Melendez v. United States</u>, 518 U.S. 120, 125-26 (1996) ("[Section] 3553(e) requires a Government motion requesting or authorizing the district court to 'impose a sentence below a level established by statute as [a] minimum sentence' before the court may impose such a sentence.")

At the end of the day, the fate of many drug-trafficking defendants lies mostly with the government's prosecutors and only slightly with the court. <u>See</u> <u>United States v. C.R.</u>, 792 F. Supp. 2d 343, 483-86 (E.D.N.Y. 2011) (Weinstein, J.) (discussing judicial discontent over mandatory-minimum-sentencing schemes and noting, among

other things, that in a recent survey conducted by the United States Sentencing Commission, 62 % of federal judges reported that the sentences they were required to impose were generally too high across-the-board); Judge Mark W. Bennett, <u>How Mandatory Minimums Forced Me to Send More Than 1,000 Nonviolent Drug Offenders to Federal Prison</u>, THE NATION, Nov. 12, 2012, <u>available at</u> http://www.thenation.com/article/170815/how-mandatory-minimums-forced-me-send-more-1000-nonviolent-drug-offenders-federal-pri.

In addition to the vast prosecutorial discretion afforded to the government, the second contextual ingredient necessary to understanding this case is the law of conspiracy--in particular, the scope of conduct for which participants in conspiracies are held responsible under the law. It is a longstanding rule that, in a criminal conspiracy, "the overt act of one partner in crime is attributable to all," so long as, given the nature of the conspiracy, it was "reasonably foreseeable" that the co-conspirator's act would be committed. <u>Pinkerton v.</u>

United States, 328 U.S. 640, 647 (1946). When that general principle is applied in the case of drug-trafficking conspiracies, the effect is that the defendant is held responsible (and statutorily subjected to the applicable mandatory-minimum sentence) for all of the drugs trafficked by co-conspirators that the defendant knew, or reasonably should have known, were being distributed. See, e.g., United States v. Bacon, 598 F.3d 772, 778 (11th Cir. 2010) ("[W]hen a defendant is convicted of participating in a drug-trafficking conspiracy under 21 U.S.C. § 846, the court must sentence the defendant based on an individualized finding, supportable by a preponderance of the evidence, as to the drug quantity foreseeable by that defendant."). So long as the amount of drugs trafficked by co-conspirators was reasonably foreseeable to the defendant, he is held responsible for that full quantity, regardless of how small the amount of drugs he actually distributed was or how otherwise relatively minor his conduct was compared to the conduct of his co-conspirators. See, e.g., United States v. Martinez, 987 F.2d 920, 924 (2d

Cir. 1993) ("[D]rug couriers are often charged with conspiracy for an entire narcotics operation, even if they only possessed a small amount."); United States v. Wynter, 379 F. App'x 841 (11th Cir. 2010) (unpublished) (defendant held liable for drugs trafficked by co-conspirators years after defendant's active involvement in the conspiracy ended); United States v. Jones, 145 F.3d 959, 966 (8th Cir. 1998) (Bright, J., concurring in part and dissenting in part) ("In this case, the lowest person on the totem pole, a mere street-level seller with an I.Q. of fifty-three received a heavier sentence than the mastermind of the conspiracy and the conspiracy's primary drug supplier. What kind of system could produce such a result? This case provides yet another example of how ... the mandatory minimums associated with drug cases make an unfair 'criminal' system.").

When these two aspects of the law (the wide scope of conspiracy liability and the ability of prosecutors to lock courts into particular mandatory-minimum sentences) converge, it is not unusual for the court to find before it

11

defendants who considered their conduct relatively minor and are now shocked at the harsh sentencing options they face. Such was the case with Bennett. While conceding his complicity in a drug-trafficking conspiracy headed by his brother-in-law (who Bennett was living with at the time), Bennett contended that his participation in the conspiracy was minor. Although he was aware of his brother-in-law's sizeable operations, Bennett himself played no role in distributing the vast majority of drugs actually trafficked. Essentially, he claimed to have done no more than several errands for his brother-in-law that were in furtherance of the drug trafficking. For that, he faced the Scylla of spending the remaining years of his life as a young man in prison (and missing the entirety of his son's childhood) or the Charybdis of gambling between complete freedom (hoping for a sympathetic jury) and life imprisonment. Meanwhile, he found it difficult to fathom that the court's power to alter the potential outcome would be so constrained, regardless of how unjustifiably harsh the government's chosen sentence may be. That Bennett,

navigating these perilous waters, made a decision in this case from which he later wavered is all too human.

DONE, this the 14th day of November, 2012.

         /s/ Myron H. Thompson
        UNITED STATES DISTRICT JUDGE